USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 12/3/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALIX PUSTILNIK

           Plaintiff,

v.

BATTERY PARK CITY AUTHORITY
AND B.J. JONES

           Defendants.

No. 18-CV-9446 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Alix Pustilnik filed this action against her former employer, Battery Park City Authority ("BPCA"), and BPCA's President, B.J. Jones, asserting claims for age discrimination in violation of the Age Discrimination in Employment Act, disability discrimination in violation of the Americans with Disabilities Act, and discrimination based on age, disability, and caretaker status in violation of the New York City Human Rights Law. Defendants have moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. For the following reasons, Defendants' motion is granted.

## BACKGROUND[1]

Pustilnik is a 51-year-old woman who was employed as the General Counsel for BPCA from May 2014 until February 21, 2018, when she was terminated. AC ¶¶ 2, 12–13. In May 2014,

---

[1] The facts in this section are drawn from Pustilnik's Amended Complaint ("AC" or "Complaint"), Dkt. 23, and are assumed to be true for the purpose of resolving this motion. *See Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).

Shari Hyman, the then-President of BPCA, hired Pustilnik for the General Counsel role. *Id.* ¶ 13. Pustilnik was approximately 46 years old at the time she was hired.

Pustilnik alleges that, during her tenure at BPCA, she was "widely recognized as a critical member of the senior staff and a valuable contributor to the work of the BPCA." *Id.* ¶ 14. In particular, Pustilnik alleges that she "built a strong department able to offer expertise and support" for BPCA and the Battery Park City Parks Conservancy, that she "provided strategic guidance" to BPCA's President and its Board of Directors, that she "commenced several new initiatives," and that she was "a popular senior leader of the BPCA and consistently took steps to improve employee morale." *Id.* ¶¶ 14–16. Pustilnik also asserts that, "[i]n recognition of [her] strong performance," she received raises throughout her tenure that increased her salary by over 14% of her starting salary. *Id.* ¶ 14.

In approximately September 2017, Hyman resigned as President of BPCA and was replaced by B.J. Jones. *Id.* ¶ 17. According to the Complaint, Jones is approximately 46 years old. *Id.* ¶ 18. Pustilnik claims that, since Jones assumed the role of President, he has, "through hiring and promotion, surrounded himself with a group of senior staff . . . who are younger than he." *Id.* To support this assertion, Pustilnik names six individuals who Jones hired or promoted into senior staff positions after he became President: (1) Kevin McCabe (approximately 32 years old); (2) Abigail Goldenberg (approximately 44 years old); (3) Alexis Torres (approximately 31 years old); (4) Eric Munson (approximately 34 years old); (5) Jahmeliah Nathan (approximately 43 years old); and (6) Shamila Baichu (approximately 43 years old). *Id.* Pustilnik also alleges that Jones "did not hire or promote employees for senior positions who were his age or older." *Id.* ¶ 19.

Pustilnik states that, in the fall of 2017, her father fell, broke his neck, became seriously ill with endocarditis, and died several weeks later. *Id.* ¶ 20. In the weeks that followed his fall, Pustilnik accompanied her father to his medical appointments and stayed in the hospital with him to ensure that he received proper care, which caused her to be "out of the office from time to time during his hospitalization." *Id.* After her father's death, Pustilnik remained out of the office for two weeks in order to care for her mother. *Id.* Pustilnik alleges that she assumed "ongoing caretaker responsibilities" for her mother during this time, which required Pustilnik to "frequently visit or call her mother to help her with daily life activities." *Id.* Pustilnik also asserts that she was "frequently occupied with these duties until her termination." *Id.*

Pustilnik alleges that her caretaking responsibilities were "well-known to BPCA senior officials" because she "communicated extensively" about them with Abigail Goldenberg (who Defendants state was Pustilnik's subordinate at the time, *see* Defs. Mot. at 6), as well as at meetings attended by Kevin McCabe, who was promoted to Chief Administrative Officer at some point in 2017. AC ¶¶ 18, 21. She also claims that Jones "was aware when she was out of the office for her caretaker responsibilities" since her office was "adjacent" to his. *Id.* ¶ 21.

In her Complaint, Pustilnik alleges that she has two disabilities: psoriatic arthritis and depression. *Id.* ¶ 22. As to her arthritis, Pustilnik states that she has suffered from psoriatic arthritis since at least 2015, and that her "arthritic condition" was "well-known to staff at the BPCA" because she used a standing desk "to avoid the pain sitting for extended periods caused her," and was "frequently required to stretch or sometimes lie down in the office or during meetings." *Id.* ¶¶ 22–23. Pustilnik also asserts that she specifically told Jones that "her pain and discomfort was caused by arthritis." *Id.* ¶ 23. She states that she "had to miss work periodically" as a result of her

arthritis, and that she sent emails "stating that she would be out of the office for doctor's appointments related to her arthritis" in the weeks before her termination. *Id.* ¶¶ 22–23.

As to her depression, Pustilnik states that she has suffered from depression since the late 1990s, and that her depression was "significantly aggravated" by "the illness and subsequent loss of her father and the difficulty in caring for her mother." *Id.* ¶¶ 22, 24. Although she does not claim that her depression was well-known to BPCA senior staff, she alleges that she shared "details" about her depression with Goldenberg, and that, when she was "visibly upset" during a staff meeting around the time when her father was hospitalized, "other attendees asked if she was [o]k and if they could help her." *Id.* ¶ 24. Pustilnik also asserts that while she was out of the office in the two weeks following her father's death, she "directly communicated with" Jones, Goldenberg, and McCabe "about the difficulty she was experiencing," and when she returned to work, she spoke to Jones, Goldenberg, and McCabe "about how she was still struggling and was having difficulty sleeping, among other difficulties." *Id.*

On February 21, 2018, Pustilnik was called into a meeting with Jones and Dennis Mehiel, BPCA's then-Chairman, and informed that her employment was being terminated. *Id.* ¶¶ 2, 25. Mehiel allegedly told Pustilnik that her termination "had nothing to do with her work performance," but rather, that "BPCA's legal department was contracting and the highest paid person would have to be terminated." *Id.* ¶ 25. According to Pustilnik, Mehiel's explanation for her termination "was false, pre-textual and designed to conceal that she was actually terminated, at least in part, because of her age, disability and caretaker status." *Id.* ¶ 26. In particular, Pustilnik asserts that the proffered reason for termination is pretextual because "[t]here had been no previous discussion of any issue with the staffing of the legal department or any need to reduce costs by eliminating a position," and, if costs were a concern, it would have made more sense to retain her

4

since she "had the broadest set of skills, experience, and institutional knowledge of any of the lawyers employed by the BPCA," and/or for BPCA to have first "ask[ed] her to accept a salary decrease." *Id.* ¶ 27.

After she was terminated, Goldenberg, who is approximately 44 years old, replaced Pustilnik as General Counsel. *Id.* ¶¶ 18, 28. Pustilnik asserts that, to her knowledge, Goldenberg "does not have any disabilities or caretaking responsibilities." *Id.* ¶ 28.

## PROCEDURAL HISTORY

On April 3, 2018, Pustilnik timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), and on August 27, 2018, the EEOC issued Pustilnik a right to sue letter. *See* AC Ex. A, Dkt. 23-1.

Pustilnik filed this action on October 16, 2018, alleging claims against BPCA for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), disability discrimination in violation of the Americans with Disabilities Act ("ADA"), and discrimination based on age, disability, and caretaker status in violation of the New York City Human Rights Law ("NYCHRL"). Dkt 1. Following unsuccessful efforts to mediate, Pustilnik filed an Amended Complaint on June 3, 2019, adding Jones as a Defendant and providing further factual support for her claims. Dkt. 23. On July 9, 2019, Defendants moved to dismiss for failure to state a claim pursuant to Rule 12(b)(6). Dkt. 26. Pustilnik filed an opposition on August 9, 2019, Dkt. 31, and Defendants replied on August 29, 2019, Dkt. 32.

## STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). On a Rule 12(b)(6) motion, the question is "not whether [the plaintiff] will ultimately prevail," but "whether [her] complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011) (internal quotation marks omitted). In answering this question, the Court must "accept[] all factual allegations as true, but 'giv[e] no effect to legal conclusions couched as factual allegations.'" *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017) (quoting *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010)).

Furthermore, at the pleading stage in the discrimination context, "a plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678). "While 'detailed factual allegations' are not required, 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Age Discrimination Claim under the ADEA

Pustilnik alleges that BPCA discriminated against her in violation of the ADEA by (1) terminating her employment and replacing her with a younger employee, (2) providing her with a false and pretextual explanation for her termination, and (3) otherwise exhibiting "a pattern of favoring younger employees in employment decisions." *See* AC ¶ 4.

To state a claim for age discrimination under the ADEA, a plaintiff must plausibly allege

6

that (1) she "was within the protected age group," (2) she "was qualified for the position," (3) she "experienced [an] adverse employment action," and (4) "such action occurred under circumstances giving rise to an inference of discrimination." *Spires v. MetLife Group, Inc.*, No. 18-CV-4464 (RA), 2019 WL 4464393, at *7 (S.D.N.Y. Sept. 18, 2019) (quoting *Gorzysnki v. JetBlue Airways Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)). Although the plaintiff need not make out a prima facie case at the motion to dismiss stage, the prima facie elements nonetheless provide a "guide-post for the adjudication of a motion to dismiss." *Vlad-Berindan v. MTA N.Y.C. Transit*, No. 14-cv-675 (RJS), 2014 WL 6982929, at *10 (S.D.N.Y. Dec. 10, 2014) (citation omitted).

Additionally, "[t]o survive a Rule 12(b)(6) motion to dismiss, a plaintiff asserting an employment discrimination complaint under the ADEA must plausibly allege that . . . her age was the 'but-for' cause of the adverse action." *Marcus v. Leviton Manufacturing Company, Inc.*, 661 F. App'x 29, 32 (2d Cir. 2016) (citing *Vega*, 801 F.3d at 87); *see also MacAlister v. Millenium Hotels & Resorts*, No. 17 Civ. 6189 (ER), 2018 WL 5886440, at *5 (S.D.N.Y. Nov. 8, 2018) ("[I]n determining whether a particular factor was a but-for cause of a given event, we begin by assuming that that factor was present at the time of the event, and then ask whether, even if that factor had been absent, the event nevertheless would have transpired in the same way.") (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989)). Thus, "an ADEA complaint must contain sufficient facts to make plausible the conclusion that 'but for' [her] age, Plaintiff [] would still be employed." *Payne v. Malemathew*, No. 09-CV-1634 (CS), 2011 WL 3043920, at *2 (S.D.N.Y. July 22, 2011) (citations omitted).

Here, since BPCA does not dispute that Pustilnik was over the age of 40, qualified for her position as General Counsel, and terminated from her job, the only issue before the Court is whether the Complaint plausibly alleges that Pustilnik's termination "occurred under

7

circumstances giving rise to an inference of discrimination." *Spires*, 2019 WL 4464393, at *7. The Court finds that it does not.

An inference of discrimination can arise from a variety of circumstances, "including, but not limited to, 'the employer's criticism of the plaintiff's performance in . . . degrading terms [based on her protected characteristic]; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn v. City of New York*, 795 F.3d 297, 312 (2d Cir. 2015) (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)); *see also Salas v. N.Y.C. Dep't of Investigation*, 298 F. Supp. 3d 676, 687 (S.D.N.Y. 2018) ("An inference of discrimination can be drawn from circumstances including 'actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus,' or 'preferential treatment given to employees outside the protected class[.]'") (quoting *Chertkova v. Connecticut Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996)). Although "there is no unbending or rigid rule about what circumstances allow an inference of discrimination when there is an adverse employment decision," *Chertkova*, 92 F.3d at 91, Pustilnik must show that she has "at least minimal support for the proposition that [BPCA] was motivated by discriminatory intent." *Rooney v. WHM LLC*, No. 16 Civ. 9960 (DAB), 2017 WL 3482066, at *4 (S.D.N.Y. Aug. 4, 2017) (quoting *Boonmalert v. City of New York*, No. 16 Civ. 4171 (KMW), 2017 WL 1378274, at *3 (S.D.N.Y. Apr. 12, 2017)); *see also Littlejohn*, 795 F.3d at 311 (at the pleading stage, plaintiff "need only give plausible support to a minimal inference of discriminatory motivation").

Pustilnik has failed to plausibly allege even a "minimal inference of discriminatory motivation" on the part of BPCA. Pustilnik alleges that she was terminated despite her "outstanding performance," replaced "with a younger employee," given "pre-textual explanations"

for her termination, and that Jones, the President of BPCA, "has exhibited a pattern of favoring younger employees in employment decisions." AC ¶ 4. But Pustilnik nonetheless does not plead any facts sufficient to show that her termination occurred under circumstances giving rise to an inference of discrimination, or that it would not have occurred but for her age.

First, Pustilnik asserts that she was terminated and replaced by Abigail Goldenberg, who is approximately 44 years old, i.e., about seven years younger than Pustilnik. AC ¶¶ 18, 28. As an initial matter, the Second Circuit has explained that "[w]ithout more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive." *Marcus*, 661 F. App'x at 33; *see also Spires*, 2019 WL 4464393, at *7 (allegation that plaintiff was replaced by someone "substantially younger" and less qualified is insufficient to raise an inference of age discrimination); *Liburd v. Bronx Lebanon Hosp. Ctr.*, No. 07 Civ. 11316 (HB), 2008 WL 3861352, at *6 (S.D.N.Y. Aug. 19, 2008) ("Although Liburd alleges that she was replaced by a younger employee, this, without more, is not enough to survive a motion to dismiss."). Although an inference of discrimination can arise when an employer replaces a terminated employee with an individual outside of the employee's protected class, *see Littlejohn*, 795 F.3d at 312–13, that is not what happened here. Goldenberg, as a 44-year-old woman, is not an individual outside of Pustilnik's protected class. Indeed, as both Pustilnik and Goldenberg are over the age of 40, they are both within the same protected class for purposes of Pustilnik's ADEA claim. *See McDermott v. N.Y.C. Hous. Dev. Corp.*, No. 10 Civ. 2029 (HB), 2011 WL 167836, at *5 (S.D.N.Y. Jan. 18, 2011) (noting that the "circumstances in this case provide assurance that no age-based discrimination took place" even though plaintiff was replaced by an individual "about ten years younger," since plaintiff was nonetheless "replaced by a person in the same protected class as he"); *see also Lomonoco v. Saint Anne Inst.*, 768 F. App'x 43, 44 (2d Cir. 2019) ("[N]o

9

inference of age discrimination can be drawn 'from the replacement of one worker with another worker insignificantly younger.'") (quoting *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996)).[2]

Pustilnik also does not allege that Jones or anyone at BPCA knew about the age discrepancy between her and Goldenberg. Where a plaintiff seeks to rely on an age discrepancy between herself and her replacement, the plaintiff must plausibly allege "'some evidence indicating [the] defendant['s] knowledge as to that discrepancy,' in order to establish that the adverse employment action that [she] experienced 'occurred under circumstances giving rise to an inference of discrimination,'" because "[d]iscriminatory intent cannot be inferred, even at the prima facie stage, from circumstances unknown to the defendant." *Ndremizara v. Swiss Re Am. Holding Corp.*, 93 F. Supp. 3d 301, 311 (S.D.N.Y. 2015) (quoting *Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76, 82–83 (2d Cir. 2005)). The Complaint contains no allegations that Jones or Mehiel knew Goldenberg's age, or that they replaced Pustilnik with Goldenberg because of that age difference.

The fact that Pustilnik was approximately 46 years old—within her protected age group—when she was first hired at BPCA further undermines her age discrimination claim. "Although the ADEA does not necessarily foreclose an age-discrimination claim when a plaintiff was over forty years old when first hired, this substantially weakens any inference of discrimination on Defendants' part." *Spires*, 2019 WL 4464393, at *8 (collecting cases); *see also Soto v. Marist College*, No. 17-CV-7976 (KMK), 2019 WL 2371713, at *14 (S.D.N.Y. June 5, 2019) ("Indeed,

---

[2] Although not dispositive, Pustilnik's claim is also undermined by the fact that Jones and Mehiel were members of the same protected class, at approximately age 46 and 77, respectively. *See Baguer v. Spanish Broad. Sys., Inc.*, No. 04 Civ. 8393 (RJS), 2010 WL 2813632, at *15 (S.D.N.Y. July 12, 2010); Defs. Mot. at 3.

Plaintiff . . . was already a member of the age group protected by the ADEA when he was hired, further undermining any possible inference of age discrimination relating to his termination."); *Baguer v. Spanish Broad. Sys., Inc.*, No. 04 Civ. 8393 (RJS), 2010 WL 2813632, at *14 (S.D.N.Y. July 12, 2010) ("Because Plaintiff was 45 years old when SBS hired him in January of 1996, this suggests that his termination in 2003 was not motivated by his age."); *Liburd*, 2008 WL 3861352, at *6 ("Liburd's conclusory allegation that the Hospital discriminated against her on account of her age is belied by her having been hired when she was forty-seven years old, and thus already a member of the protected class."). In sum, Pustilnik's allegation that she was replaced by Goldenberg does not raise an inference of age discrimination.

Moreover, Pustilnik's age discrimination claim cannot survive based on her conclusory allegations that Mehiel's explanation for her termination "was false, pre-textual and designed to conceal that she was actually terminated, at least in part, because of her age," AC ¶ 26, or that Jones, "through hiring and promotion, [has] surrounded himself with a group of senior staff . . . who are younger than he," *id.* ¶ 18.

According to the Complaint, Mehiel explained to Pustilnik that her termination "had nothing to do with her work performance," but rather, that "the BPCA's legal department was contracting and the highest paid person would have to be terminated." *Id.* ¶ 25. Pustilnik asserts that this explanation was false and pretextual because "[t]here had been no previous discussion of any issue with the staffing of the legal department or any need to reduce costs by eliminating a position," and, if costs were a concern, it would have made more sense to retain her since she "had the broadest set of skills, experience, and institutional knowledge of any of the lawyers employed by the BPCA," and/or for BPCA to have first "ask[ed] her to accept a salary decrease." *Id.* ¶ 27. The Complaint, however, contains no allegations, other than Pustilnik's subjective views on how

BPCA should have handled its desire to cut costs, to support her conclusory statement that Mehiel's proffered reason was pretextual. Such conclusory allegations cannot establish an inference of discrimination. *See Idlisan v. N.Y.C. Health & Hosps. Corp.*, No. 12 Civ. 9163 (PAE), 2013 WL 6049076, at *5 (S.D.N.Y. Nov. 15, 2013) (dismissing discrimination claim where plaintiff merely "expresses his own personal belief, in a conclusory manner, that [the adverse employment action] was based on his [protected characteristic]").

Finally, as to her allegations that Jones favored younger employees, Pustilnik appears to be asserting a discrimination claim based on disparate treatment. In order to plausibly allege discrimination based on disparate treatment, "a plaintiff 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.'" *Lopez v. N.Y.C. Dep't of Educ.*, No. 17-CV-9205 (RA), 2019 WL 2647994, at *3 (S.D.N.Y. June 26, 2019) (quoting *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)). Pustilnik claims that Jones has "surrounded himself with a group of senior staff . . . who are younger than he," and that he has not "hire[d] or promote[d] employees for senior positions who were his age or older." AC ¶¶ 18–19. To support this allegation, Pustilnik names six individuals who are younger than both her and Jones. As an initial matter, three out of six of these employees are over the age of forty, and therefore also in the same protected age group as both Pustilnik and Jones. It is not clear how Jones's hiring and/or promoting individuals ages 43 and 44—only 2 to 3 years younger than him— shows that he favors younger employees, as Pustilnik claims. In any event, although Pustilnik alleges the ages of these six individuals and the positions to which they were hired or promoted, she does not allege any other details about the circumstances surrounding their hires, promotions, or qualifications. In other words, Pustilnik has not provided any specifics to show how she and these other individuals, including Goldenberg, were similarly situated. Without details as to the

circumstances of any hiring or promoting of "younger employees," or a showing of how such employees were similarly situated to Pustilnik, the mere fact that Jones hired employees who are younger than he—and she—is not enough. *See Lopez*, 2019 WL 2647994, at *3 (dismissing age discrimination claim where plaintiff "identifie[d] a younger colleague" and "assert[ed] that this [younger] individual was treated better than himself and given certain career advancements, based on [his] age, that he did not receive," but where plaintiff nonetheless failed "to provide any specifics that indicate how he and [the younger individual] were similarly situated"); *Baguer*, 2010 WL 2813632, at *15 (finding that plaintiff's "allegation that younger employees received preferential treatment [was] unsupported by the record" because plaintiff did not "identify any specific [account executives], their ages, or which more favorable accounts they were assigned").

In sum, Pustilnik has not plausibly alleged that her termination was in any way connected to her age, or, put differently, that age was the "but-for" cause of her termination. Nor has she plausibly alleged that she was treated differently because of her age. The Court therefore grants Defendants' motion to dismiss Pustilnik's age discrimination claim.

## II. Disability Discrimination Claim under the ADA

Pustilnik alleges that BPCA discriminated against her in violation of the ADA by terminating her and replacing her with an individual who, to her knowledge, does not have a disability. *See* AC ¶¶ 4, 28. Like her ADEA claim, however, Pustilnik's ADA claim also fails.

To establish a prima facie case of disability discrimination under the ADA, a plaintiff must plausibly allege that (1) her employer is subject to the ADA, (2) she is disabled within the meaning of the ADA, (3) she "was qualified to perform the essential functions of the job, with or without reasonable accommodation," and (4) she "suffered an adverse employment action *because of* [her] disability or perceived disability." *Soto*, 2019 WL 2371713, at *12 (quoting *Kinneary v. City of*

13

*New York*, 601 F.3d 151, 155–56 (2d Cir. 2010)) (emphasis added). As with her ADEA claim, at the motion to dismiss stage, Pustilnik must provide "at least minimal support for the proposition that [BPCA] was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311; *see also Vlad-Berindan*, 2014 WL 6982929, at *10 (while plaintiff need not make out a prima facie case at this stage, the "prima facie elements 'provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible'") (quoting *Idlisan*, 2013 WL 6049076, at *4). "As with claims brought under other employment discrimination statutes like Title VII or the ADEA, the '*sine qua non*' of an ADA discriminatory action claim 'is that the discrimination must be 'because of' the employee's protected status.'" *Idlisan*, 2013 WL 6049076, at *4 (quoting *Williams v. Addie Mae Collins Community Serv.*, No. 11 Civ. 2256 (LAP), 2012 WL 4471544, at *2 (S.D.N.Y. Sept. 27, 2012)). Thus, "[w]here there is no reason to suspect that an employer's actions had anything to do with membership in a protected class, other than [the] plaintiff's bald assertion that [she] was a member of such a class, and the people who made decisions about [her] employment were not, no claim is stated." *Soto*, 2019 WL 2371713, at *14 (quoting *Ochei v. The Mary Manning Walsh Nursing Home Co.*, No. 10 Civ. 2548 (CM) (RLE), 2011 WL 744732, at *3 (S.D.N.Y. Mar. 1, 2011)).

BPCA does not dispute that it is subject to the ADA, that Pustilnik is disabled under the ADA, or that Pustilnik was qualified to perform the essential functions of her job. Thus, the only question is whether Pustilnik has plausibly alleged that her termination occurred *because of* her disability. The Court finds that Pustilnik has failed to plead facts sufficient to support this element.

Pustilnik's Complaint is devoid of facts that could buttress her assertion that the explanation for her termination was pretextual and that she was really terminated, at least in part, because of her disability. Pustilnik does not allege, for instance, that Jones or Mehiel, or anyone

14

else at BPCA, ever made any comments about her arthritis or depression, let alone that such conditions played any role in BPCA's decision to terminate her. *See Soto*, 2019 WL 2371713, at *13 (dismissing disability discrimination claim where there were "no allegations that anyone . . . commented on [plaintiff's disability], failed to accommodate it, or otherwise demonstrated hostility toward Plaintiff due to this alleged disability," nor were there "any facts connecting the alleged disability to his termination"); *Salas*, 298 F. Supp. 3d at 687 (dismissing disability discrimination claim where plaintiff had not alleged "that her supervisors or other management . . . made any statements about . . . her disability, let alone statements indicating that [it] played a role in their decisions"); *Osby v. City of New York*, No. 13-cv-8826 (TPG), 2016 WL 4372233, at *7 (S.D.N.Y. Aug. 15, 2016) (dismissing disability discrimination claim where "the complaint [was] bare of facts supporting any connection between [plaintiff's] disability and [the adverse employment action]").

Although Pustilnik argues that she was terminated shortly after Jones became BPCA President "and gained the authority to terminate her employment," *see* Pl. Opp'n at 14, she nonetheless fails to plausibly allege that Jones displayed any animus towards her or anyone else at BPCA based on any actual or perceived disability. There is simply no connection alleged between Pustilnik's depression or arthritis, on the one hand, and her termination, on the other. *See Idlisan*, 2013 WL 6049076, at *5 (dismissing disability discrimination claim where complaint did not plead "a plausible nexus" between the plaintiff's disability and the adverse employment action, and where the complaint merely "expresse[d] [the plaintiff's] own personal belief, in a conclusory manner, that [the employer's] decision not to hire him was based on his disability").[3]

---

[3] The fact that Jones may have known about Pustilnik's arthritis and/or depression is also insufficient to raise the requisite inference of discrimination. *See Vlad-Berindan*, 2014 WL 6982929, at *14 ("The mere fact that an

The sole allegation purporting to support her ADA claim—that she was replaced by a non-disabled individual, AC ¶ 28—cannot raise an inference of discrimination absent further factual support. *See Jackson v. County of Rockland*, 450 F. App'x 15, 19 (2d Cir. 2011) (affirming dismissal of disability discrimination claim in light of plaintiff's "bald assertions of discrimination . . . unsupported by any comments, actions or examples" from which the court could infer that defendant's conduct was motivated by discriminatory intent); *Majied v. New York City Dep't of Educ.*, No. 16-CV-5731 (JMF), 2018 WL 333519, at *3 (S.D.N.Y. Jan. 8, 2018) (noting that plaintiff's "subjective belief that she was treated differently on account of a disability is plainly not enough to state a claim").

The Court thus grants Defendants' motion to dismiss Pustilnik's disability discrimination claim.

### III. Remaining NYCHRL Claims

Finally, Pustilnik alleges that both BPCA and Jones discriminated against her on the basis of her age, disabilities, and caregiver status in violation of the NYCHRL. Because the Court has dismissed Pustilnik's federal claims, the Court declines to exercise supplemental jurisdiction over her NYCHRL claims. *See Lopez*, 2019 WL 2647994, at *5 ("Generally speaking, courts decline to exercise supplemental jurisdiction over state-law claims once all federal claims in a case are dismissed.") (citing *Anegada Master Fund, Ltd. v. PXRE Grp. Ltd.*, 680 F. Supp. 2d 616, 624–25 (S.D.N.Y. 2010)); *see also Harris v. NYU Langone Med. Ctr.*, No. 12 Civ. 0454 (RA), 2014 WL 941821, at *2 (S.D.N.Y. Mar. 11, 2014). The Court does so without prejudice.

---

employer was aware of an applicant's disability when deciding not to hire her is insufficient to raise an inference of discrimination.").

## CONCLUSION

Although the Court is sympathetic to Pustilnik's circumstances, she has nonetheless failed to state causes of action for age discrimination under the ADEA and disability discrimination under the ADA as a matter of law. These claims are thus dismissed. The Court declines to exercise supplemental jurisdiction over Plaintiff's discrimination claims under the NYCHRL, and she may file those claims in state court.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 26 and close the case.

SO ORDERED.

Dated: December 3, 2019
New York, New York

Ronnie Abrams
United States District Judge